IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GIBSON GUITAR CORP., ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 3:11-cv-00370 |
| ) | Judge Trauger |
| MITSUI SUMITOMO INSURANCE OF ) | |
| AMERICA, MITSUI SUMITOMO MARINE ) | |
| MANAGEMENT (U.S.A.), INC., ) | |
| CONTINENTAL INSURANCE COMPANY, ) | |
| WILLIS OF TENNESSEE, INC., and ) | |
| WILLIS OF MICHIGAN, INC., ) | |
| ) | |
|     **Defendants.** ) | |

## MEMORANDUM

Pending before the court are: (1) a Motion to Remand filed by the plaintiff (Docket No. 18), to which defendants Mitsui Sumitomo Insurance Company of America and Mitsui Sumitomo Marine Management (U.S.A.), Inc. (collectively, "Mitsui") have filed a response (Docket No. 26), and in support of which the plaintiff has filed a reply (Docket No. 33); and (2) a Motion to Dismiss filed by Mitsui (Docket No. 17), to which defendant Continental Insurance Company has filed a response (Docket No. 23).[1]  For the reasons discussed below, the Motion to Remand will be granted, and the Motion to Dismiss will be denied as moot.

## BACKGROUND

---

[1] The plaintiff has not filed a response to Mitsui's Motion to Dismiss. The court previously granted the plaintiff's motion to extend the deadline to respond until 15 days after the court rules on the Motion to Remand. (Docket No. 25.)

1

The plaintiff, Gibson Guitar Corp. ("Gibson"), manufactures guitars at a facility on Massman Drive in Nashville, Tennessee (the "Massman Drive Facility").[2] In May 2010, Nashville underwent catastrophic flooding, which caused approximately $17 million in damage to Gibson's inventory and other property at the Massman Drive Facility.

Gibson alleges that it had previously retained defendant Willis of Tennessee, Inc. to procure $25 million of insurance for the Massman Drive Facility. In 2003 and 2004, Willis of Tennessee, Inc., along with an affiliated company, defendant Willis of Michigan, Inc. (collectively, "Willis"), obtained a marine open cargo insurance policy from defendant Continental Insurance Company ("Continental") and an excess insurance policy from defendant Mitsui for Gibson. These policies covered the inventory housed at the Massman Drive Facility. Gibson alleges that Willis represented that these policies provided $25 million of insurance coverage. (Docket No. 1, Ex. 1 ¶ 14.)

Gibson submitted claims to Willis regarding the property damaged in the flooding, and disputes eventually arose among Gibson, Continental, and Mitsui regarding the scope of coverage. Ultimately, Continental maintained that its liability was capped at $10 million, and Mitsui denied any liability.

On January 14, 2011, Mitsui filed an action against Gibson and Continental in federal district court in the Southern District of New York, seeking a declaration that Mitsui has no obligation to provide coverage for Gibson's losses. (*See* Docket No. 27, Ex. 1.) That action is

---

[2] Unless otherwise noted, the allegations and procedural facts are drawn from the parties' submissions.

currently pending. On March 2, 2011, Gibson filed a complaint in this court against Mitsui and Continental regarding the insurance dispute. Gibson voluntarily dismissed the suit on March 22, 2011 and, the next day, filed a suit in the Chancery Court for Davidson County, Tennessee (the "Tennessee Action"). Gibson's state-court complaint was similar to its federal complaint, except that the new complaint added Willis as a defendant.[3] On April 19, 2011, Mitsui, with the consent of Continental (but not Willis), removed the Tennessee Action to this court on diversity grounds.

Gibson's current Complaint seeks damages against all of the defendants, as well as various declaratory relief. Specifically, the Complaint includes a claim for breach of contract against Mitsui and Continental, alleging that the Massman Facility loss falls within the scope of coverage of the policies. In the alternative, the Complaint includes claims for: (1) breach of contract "by estoppel" against Mitsui and Continental, alleging that Willis acted as the insurers' agent and that the insurers are bound by Willis' representations that the policies provided $25 million in coverage;[4] (2) reformation of the insurance policies; and (3) negligent failure to

---

[3] Gibson claims that it did not name Willis in its federal suit because, pursuant to a mandatory forum-selection clause between Gibson and Willis, the federal district court might lose subject-matter jurisdiction over claims against Willis if the action were transferred to the Southern District of New York. (Docket No. 19 at 4 n.1.) Gibson states that it re-filed suit in Tennessee state court so that it could prosecute one consolidated action against all parties. (*Id.*) In response, Mitsui argues that the forum-selection clause between Willis and Gibson would not have divested a New York federal court of jurisdiction. (Docket No. 26 at 5 n.3.) Mitsui claims that Gibson was more concerned with avoiding the Sixth Circuit's "first-to-file" rule, which would have required dismissal of Gibson's federal suit, but which does not apply to state-court suits. (*Id.* at 5-6 n.3.)

[4] Tennessee law provides that an insurance broker, such as Willis, is treated as the agent of the insurance company. *See* Tenn. Code Ann. § 56-6-115(b) ("An insurance producer who solicits or negotiates an application for insurance shall be regarded, in any controversy arising

3

procure insurance against Willis, alleging that Willis negligently failed to procure the promised $25 million of insurance coverage.

Upon removal of the Tennessee Action to this court, Mitsui filed a Motion to Dismiss, arguing that the case should be dismissed under the "first-to-file" rule or, alternatively, that it should be transferred to the Southern District of New York. (*See* Docket No. 14 at 9-22.) In lieu of responding to that motion, Gibson filed a Motion to Remand, seeking a remand to Tennessee state court and an award of costs and fees related to Mitsui's removal.

**ANALYSIS**

It is axiomatic that a federal court lacks diversity jurisdiction if there is not complete diversity among the parties – that is, there is no jurisdiction if at least one plaintiff and one defendant are residents of the same state. *U.S. Fid. & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992); *see also* 28 U.S.C. § 1332(a). Here, plaintiff Gibson and defendant Willis of Tennessee, Inc. are both Tennessee corporations, which ordinarily would render Mitsui's removal of the Tennessee Action to this court improper.[5] Mitsui, however, argues that Willis should be realigned as a plaintiff, which would create complete diversity.

Generally, "[r]emoval statutes are to be strictly construed, and 'all doubts as to the propriety of removal are resolved in favor of remand." *Hudgins Moving & Storage Co. v. Am. Express Co.*, 292 F. Supp. 2d 991, 995 (M.D. Tenn. 2003) (quoting *Coyne v. Am. Tobacco Co.*,

---

from the application for insurance or any policy issued in connection with the application between the insured or insured's beneficiary and the insurer, as the agent of the insurer and not the insured or insured's beneficiary.").

[5] In addition, 28 U.S.C. § 1441(b) provides that removal is improper if any defendant is "a citizen of the State in which such action is brought."

183 F.3d 488, 493 (6th Cir. 1999)). The court must realign parties for jurisdictional purposes, however, if "the interests of a party named as a defendant coincide with those of the plaintiff in relation to the purpose of the lawsuit." *Thomas Solvent*, 955 F.2d at 1089 (quoting *Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 (9th Cir. 1987)).

The Sixth Circuit has explained:

> In [*Indianapolis Gas v. Chase National Bank*, 314 U.S. 63 (1941)], the Supreme Court established a general test for determining the appropriate alignment of parties in an action where federal jurisdiction is based on diversity. The Court stated that "whether the necessary 'collision of interests'. . . exists, is [] not to be determined by mechanical rules. It must be ascertained from the 'principal purpose of the suit,' . . . and the primary and controlling matter in dispute.'"

*Id.* at 1089 (alteration and ellipses in original). Therefore, the parties' proper alignment depends on the "primary purpose" of the suit.[6] *Id.* at 1091; *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 560 (6th Cir. 2010) (determining proper alignment by examining the suit's "primary purpose"). The Sixth Circuit has held that, even if various parties have "ancillary or secondary" disputes against each other, the parties should nevertheless be aligned in accordance with the primary purpose of the action.[7] *Thomas Solvent*, 955 F.2d at 1089.

---

[6] The relevant cases use the terms "primary purpose," "principal purpose," "primary dispute," "primary controversy," and "primary issue" more or less interchangeably. For simplicity, the court will refer to the test announced in *Thomas Solvent* as the "primary purpose" test.

[7] In *Thomas Solvent*, the Sixth Circuit explicitly rejected the stricter approach taken by the Seventh Circuit, which holds that "realignment is only proper 'where there is no actual, substantial conflict between the parties that would justify placing them on opposite sides of the lawsuit.'" 955 F.2d at 1090 (quoting *Am. Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146, 151 (7th Cir. 1981)).

5

In *Thomas Solvent*, the defendant, Thomas Solvent, had been sued for causing pollution, and it sought coverage from its insurers for expenses arising from those actions. *Id.* at 1086. One of the insurers, USF&G, filed suit against Thomas Solvent and the other insurers, seeking (1) a declaration that USF&G did not have a duty to defend or indemnify Thomas Solvent or (2) a declaration that, if it did have such a duty, its liability was shared by the other insurers. *Id.* at 1087. Certain parties filed motions for realignment, which would destroy diversity jurisdiction. *Id.*

The Sixth Circuit held that the primary purpose of the suit was "whether the insurers have a duty to indemnify [Thomas Solvent]." *Id.* at 1089. Thus, although USF&G had an actual dispute with the other insurers regarding potential contribution claims, the court realigned Thomas Solvent on one side and USF&G and the other insurers on the other. *Id.* at 1091. The court explained:

> [W]e agree with the district court's conclusion that the insurers' duty to indemnify is the primary dispute. The issue of contribution can only be addressed after the court has determined which of the various insurers have a duty to indemnify [Thomas Solvent]. Moreover, if the insurers are held not to owe a duty to indemnify [Thomas Solvent], then the issue of contribution is moot. Therefore, it is clear that the contribution issue is ancillary to the issue of whether the insurers' have a duty to indemnify [Thomas Solvent].

*Id.* at 1090-91.

Here, Mitsui argues that the suit's primary purpose is to determine "whether, and to what extent, Continental and [Mitsui] are obligated to indemnify Gibson for the Massman [Facility] Losses." (Docket No. 26 at 8.) Mitsui points out that Gibson can recover against Willis on a

6

negligent procurement theory if, and only if, the court (or a jury) determines that the plaintiff's losses are not actually covered by the two policies. Thus, Mitsui concludes that, because both Gibson and Willis would benefit if the court finds that the policies cover the Gibson's losses, their interests are aligned as to the suit's primary purpose, and both parties should be aligned as plaintiffs. Mitsui characterizes any claim by Gibson against Willis as being secondary and ancillary to the suit's primary purpose.

This is too narrow a view of the primary purpose of Gibson's suit. Whether realignment is proper under the "primary purpose" test necessarily depends, to some degree, on the level of generality when formulating the suit's purpose. *See Bolin v. Jackson Nat'l Life Ins. Co. (In re Jackson Nat'l Life Ins. Co. Premium Litig.)*, No. 5:03-CV-25, 2004 U.S. Dist. LEXIS 8164, at *8 (W.D. Mich. Apr. 30, 2004) ("[The defendant's] argument illustrates that 'primary purpose' is in the eyes of the beholder.") "[T]he principal purpose of the action should be judged in the first instance from [the plaintiff's] perspective." *Id.*

The court finds that Gibson correctly characterizes this suit's primary purpose as determining "the allocation of responsibility among the insurers and brokers for Gibson's $17 million loss." (Docket No. 19 at 9.) The claims asserted by Gibson and the relevant case law both support this formulation.

First, taking the claims as a whole, it is clear that Gibson seeks to recover money from one, two, or all of the defendants to compensate it for its losses at the Massman Drive Facility. It is true that Gibson is pursuing certain of its claims in the alternative; specifically, if Gibson recovers on its claims that its losses are covered under the policies' terms, it necessarily cannot

7

recover under the theory that Willis was negligent in procuring the policies. Mitsui argues that this means that any claim against Willis is secondary to the claims against Mitsui and Continental. But Mitsui ignores the fact that, at this stage, it appears entirely possible for Gibson to recover against all three defendants – if Gibson recovers against Willis on the negligent procurement claim, it may still recover against Mitsui and Continental on the "breach of contract by estoppel" claim, because both claims are premised on the representations made by Willis rather than on the terms of the policies.[8] Thus, it is not true that recovery against Willis is *necessarily* mutually exclusive with recovery against the two insurance companies, nor is it true that Willis' and Gibson's interests are entirely aligned. This supports a broader formulation of Gibson's primary purpose.

Second, even if Gibson's recovery against Willis and the insurers were mutually exclusive, that fact would not merit the realignment of Willis as a plaintiff. A defendant's contribution claim against another defendant, as in *Thomas Solvent*, is entirely derivative of the plaintiff's initial claim; thus, contribution claims can rightfully be considered secondary or ancillary to the plaintiff's claims. In contrast, a plaintiff's alternative claims against multiple defendants are not simply derivative of each other. Here, for example, Gibson could have brought its claims against Willis independently, with no reference to any claims against Mitsui or Continental. "[C]ourts seem consistently to have determined that, where the plaintiff's case includes a substantive cause of action against a defendant, that defendant should not be realigned as a plaintiff notwithstanding the fact that both plaintiff and defendant would benefit from a

---

[8] The court expresses no opinion as to the ultimate viability of any of Gibson's claims.

8

finding against a second defendant."[9] *Landmark Funding, LLC v. Perrault*, No. L-10-1638, 2011 U.S. Dist. LEXIS 24598, at *6, 10 (D. Md. Mar. 10, 2011) (applying the "primary purpose" test).

In *Arnold v. Sphere Drake*, No. 93-1546, 1993 U.S. Dist. LEXIS 9356 (E.D. La. June 30, 1993), the district court faced an essentially identical situation. The plaintiff, which had suffered the loss of a ship, sued its insurer and its insurance agent, claiming that the insurance policy actually covered the loss or, alternatively, that the agent was negligent in failing to procure sufficient coverage. *Id.* at *2-3. The court, applying the "primary purpose" test, held that both the insurer and the broker should remain as defendants.[10] *Id.* at *11. In doing so, the court rejected the insurer's narrow contention that "the principal purpose of [the] suit [was] to compel [the insurer] to provide marine P&I insurance coverage for the sinking of the [ship]." *Id.* at *10.

Similarly, in *In re Jackson National Life Insurance*, the plaintiffs sued both their insurer

---

[9] Moreover, if courts were generally required to realign parties when the plaintiff has pleaded claims in the alternative against two groups of defendants, it would often be unclear which side the plaintiff should be placed on. For example, consider a hypothetical in which a plaintiff seeks, in the alternative, to recover against either Defendant A or Defendant B, and in which it is factually or legally impossible for both Defendant A and Defendant B to be liable. Mitsui essentially argues that Defendant B should be realigned with the plaintiff, because both parties would benefit from Defendant A's liability. But, at the same time, it is equally true that Defendant A should be realigned with the plaintiff, because both would benefit from Defendant B's liability.

[10] Contrary to Mitsui's assertion (Docket No. 26 at 13), both *Landmark Funding* and *Arnold* applied the same "primary purpose" realignment test employed by the Sixth Circuit. *See Landmark Funding*, 2011 U.S. Dist. LEXIS 24598, at *6 ("[C]ourts in the Fourth Circuit apply the 'principal purpose' test, by which they first ascertain the 'collision of interests' from the principal purpose of the suit, and the primary and controlling matter in dispute" (quotation marks omitted)); *Arnold*, 1993 U.S. Dist. LEXIS 9356, at *8 ("Realignment of the parties is determined by the principal purpose of the suit and the primary and controlling matter in dispute." (quotation marks omitted)).

9

and an insurance agent for alleged fraud and negligence related to the sale of life insurance. 2004 U.S. Dist. LEXIS 8164 at *1-2. The agent then filed a cross-claim against the insurer, claiming that he, too, had been injured by the insurer's fraud and negligence. *Id.* at *2. The insurer sought realignment, arguing that the primary purpose of the suit was "establishing whether [the insurer] had engaged in the alleged deceptive sales practices." *Id.* at *2-3. Because the plaintiffs' claims against the agent were not a mere sham, however, the district court for the Western District of Michigan refused to realign the parties. Instead, the court held that the primary purpose of the suit, from the plaintiffs' perspective, was broadly "to be made whole for the injuries sustained by them as a result of [the insurer's] and/or [the agent's] wrongful conduct." *Id.* at *8.

Here, Gibson seeks compensation from Willis and/or Mitsui and Continental to cover the losses that it suffered at the Massman Drive Facility.[11] That is the primary purpose of the suit from the plaintiff's perspective, and, in that regard, the plaintiff is adverse to all three defendants and is properly aligned against them. *Cf. Cleveland Hous.*, 621 F.3d at 557, 559-60 (realigning the parties when the complaint "[did] not allege any cause of action against [nominal defendant]

---

[11] Mitsui argues that, because Gibson and Willis have cooperated to some degree in the pending New York action – for instance, they have apparently voluntarily exchanged discovery – they are "on the same side" of the instant dispute. (Docket No. 26 at 2.) Mitsui points to the existence of a "letter agreement," which Mitsui suggests is a settlement agreement between the two parties. (*Id.*) But Gibson explains in its reply brief that the letter agreement was actually a "post-loss consulting arrangement with [Willis] to provide assistance with pursuing Gibson's [insurance] claim" and that the agreement has since been terminated. (Docket No. 33 at 3.) Thus, the agreement has no impact on Gibson's right to pursue the instant claims against Willis. (*Id.*) Gibson has offered to produce the letter agreement for *in camera* inspection, but the court finds this to be unnecessary. It seems clear that Gibson seeks to recover against Willis via the instant suit and that the claims against Willis are not a sham.

the City, nor [did] it seek any relief from the City"). It is immaterial that, on certain claims and in certain respects, Gibson's and Willis' interests might overlap.[12] Accordingly, the parties to this suit should not be realigned, and the suit should be remanded to state court because there is not complete diversity between the plaintiff and the defendants.

Gibson seeks payment by Mitsui of Gibson's attorney's fees and costs relating to the improper removal. *See* 48 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). Such an award is proper only if "a party attempts removal absent an objectively reasonable basis." *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 332 (6th Cir. 2007). Here, the court finds that Mitsui's arguments had an objectively reasonable basis. Notably, in *Arnold*, which dealt with arguments that were essentially identical to those made here, the court declined to assess fees.[13] 1993 U.S. Dist. LEXIS 9356 at *11-12. This court, too,

---

[12] The cases cited by Mitsui are not to the contrary. Instead, some simply hold that a defendant should not be realigned as a plaintiff if the defendant might eventually seek contribution against another defendant. *E.g.*, *Markel Ins. Co. v. Progressive Mich. Ins. Co.*, No. 1:09-CV-1072, 2010 U.S. Dist. LEXIS 134686, at *7 (W.D. Mich. Dec. 21, 2010) ("[T]he parties should generally be realigned such that the insured is on one side and the insurers are on the other."); *see also Commercial Union Ins. Co. v. Cannelton Indus., Inc.*, 154 F.R.D. 164, 166 (W.D. Mich. 1994) (realigning an insured against its insurers). None of Mitsui's cases holds that a defendant should be realigned as a plaintiff simply because the plaintiff has asserted claims in the alternative. *See, e.g.*, *McKeen v. Cont'l Cas. Co.*, No. 10-10624, 2010 U.S. Dist. LEXIS 85747, at *8 (E.D. Mich. Aug. 19, 2010) (realigning a defendant when the plaintiff apparently did not seek recovery against her); *Club at Hokuli'a, Inc. v. Am. Motorists Ins. Co.*, No. 10-00241, 2010 U.S. Dist. LEXIS 114569, at *11 (D. Haw. Oct. 26, 2010) (refusing to realign a defendant when the extent of its liability to the plaintiff was in question and "the primary matter in dispute . . . [was] who is liable [to the plaintiff] . . . and what the extent of their liability is").

[13] Mitsui's attempt to argue that *Arnold* was incorrectly decided or is inapplicable was not unreasonable; *Arnold*, of course, is not binding precedent, because it is a district court case from the Eastern District of Louisiana.

11

will decline the plaintiff's request for fees.

Finally, because this case will be remanded to state court, Mitsui's Motion to Dismiss, which is premised on the Sixth Circuit's "first-to-file" rule, will be denied as moot.

## **CONCLUSION**

For the reasons discussed above, the court will grant the plaintiff's Motion to Remand and will order that this case be remanded to the Chancery Court for Davidson County, Tennessee. Costs and fees will not be assessed against Mitsui. The court will deny as moot Mitsui's Motion to Dismiss.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge